UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN D. VANDERPOOL,

    *Plaintiff*,

v.                                  CASE NO. 12-CV-13727

COMMISSIONER OF               DISTRICT JUDGE DENISE PAGE HOOD
SOCIAL SECURITY,                 MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, Disability Insurance

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Benefits, and Supplemental Security Income ("SSI") benefits. This matter is currently before the court on cross-motions for summary judgment. (Docs. 11, 17.)

Plaintiff was 37 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 44.) Plaintiff's employment history includes work in production for two weeks in 2007. (Tr. at 195 .) Plaintiff filed the instant claims on October 2, 2008, alleging that he became unable to work on February 2, 1998. (Tr. at 171, 175.) The claims were denied at the initial administrative stages. (Tr. at 97, 98.) In denying Plaintiff's claim, the Commissioner considered "Substance Addiction - Drug" as a possible basis for disability. (*Id.*) On November 2, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Peter N. Dowd, who considered the application for benefits *de novo*. (Tr. at 13-36, 38-76.) In a decision dated January 8, 2011, the ALJ found that Plaintiff was not disabled at any time through September 30, 2007, the date last insured, but became disabled on October 1, 2008, the date Plaintiff filed the SSI application. (Tr. at 31-32.)

Plaintiff requested a review of this decision and the ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on June 28, 2012, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-4.) On August 22, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's partially unfavorable decision.

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to

2

the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations

3

based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

Judicial review of the ALJ's decision is direct, "but we play an 'extremely limited' role." *Simila v. Astrue,* 573 F.3d 503, 513-14 (7th Cir. 2009). "We do not actually review whether [the claimant] is disabled, but whether the Secretary's finding of not disabled is supported by substantial evidence." *Lee v. Sullivan*, 988 F.2d 789, 792 (7th Cir. 1993). Just as "'[n]o trial is perfect,' . . . no administrative hearing or opinion is either[;] thus, in analyzing an ALJ's decision, a reviewing court is to look for 'fatal gaps or contradictions' and not 'nitpick' in search of essentially meaningless missteps." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1965 (N.D. Ill. 2011).

### C.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [her] impairments and the fact that [she] is precluded from performing [her] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and

considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through September 30, 2007, and that he had not engaged in substantial gainful activity since the alleged onset date of February 2, 1998. (Tr. at 20-21.) At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar and cervical spines, obesity with history of ventral hernia, diabetes mellitus, and recent bipolar disorder with history of cannabis abuse were "severe" within the meaning of the second sequential step. (Tr. at 21-24.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 24-26.) At step four, the ALJ found that Plaintiff could not perform any of his past relevant work. (Tr. at 30.) At step five, the ALJ found that through September 30, 2007, the date last insured, Plaintiff could perform a limited range of light work. (Tr. at 26-28.)

The ALJ further found that since October 1, 2008, the protective filing date for SSI, Plaintiff could perform a limited range of sedentary work. (Tr. at 28-29.) However, the ALJ also found that since October 1, 2008, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. at 31.) The ALJ also found that Plaintiff was a younger individual on the alleged disability onset date. (Tr. at 30.) Therefore, the ALJ found that Plaintiff was not disabled at any time through September 30, 2007, the date last insured but became disabled on October 1, 2008. (Tr. at 31-32.)

### E.     Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was counseled at List Psychological Services for help with learning to "cope without the use of marijuana." (Tr. at 256.) On May 15, 2006, x-rays of Plaintiff's chest were "normal[.]" (Tr. at 252.)

At the request of Disability Determination Services ("DDS"), Plaintiff was examined on October 24, 2007, by R. Scott Lazzara, M.D. (Tr. at 273-75.) Dr. Lazzara noted that Plaintiff had undergone L4-S1 fusion surgery in 1999 and that Plaintiff was taking pain medication for continuing back pain. (Tr. at 273.) Dr. Lazzara also noted that Plaintiff was "able to do household chores" and "able to drive and do his independent activities of daily living." (*Id.*) Plaintiff reported that he "can sit about 20 minutes, stand about 10 minutes, walk about two blocks, and can occasionally lift upwards of 20 pounds." (*Id.*) Dr. Lazzara noted that although Plaintiff was "depressed and tearful[,]" his "immediate, recent and remote memory is intact with normal concentration" and his "insight and judgment are both appropriate." (Tr. at 274.) Dr. Lazzara concluded that Plaintiff's "symptomatology does appear to be related to his lack of conditioning" and that his "long-term prognosis does appear good with appropriate treatment[.]" (Tr. at 275.) Dr. Lazzara recommended physical therapy, pain management and endurance training. (*Id.*)

On November 28, 2007, Plaintiff was diagnosed by Lenny Sujdak, D.O., and Maria Lawrence, D.O., with new-onset diabetes. (Tr. at 295.) The following day, a CT scan of Plaintiff's abdomen showed a "left ventral abdominal wall hernia" and "[f]atty infiltration of the liver." (Tr. at 291.) A chest x-ray taken on the same day was normal. (Tr. at 292.)

Plaintiff underwent a hernia operation on February 5, 2008. (Tr. at 308.)

8

A Psychiatric Review Technique completed on March 9, 2009, by Mark Garner, Ph.D., concluded that there was insufficient evidence of Substance Addiction Disorder. (Tr. at 325.)

On March 30, 2010, Plaintiff sought treatment in the emergency room for abdominal pain. "[D]rug seeking behavior" was noted and Plaintiff "[l]eft the emergency room against medical advice." (Tr. at 358.)

Plaintiff was also treated by Albert Young, D.O., at the Bayside Health Center from May 2009 through June 2010. (Tr. at 366-72, 373-95.) Dr. Young opined that Plaintiff could sit less than six hours and stand or walk less than two hours in an eight-hour workday, occasionally lift ten pounds, was limited in using hand, arm or foot controls, but had no mental limitations. (Tr. at 372.)

Plaintiff was assessed for mental impairments by Thomas Seibert, M.S., in July and August of 2010. (Tr. at 396-425.) Seibert opined that Plaintiff had "only borderline verbal intellectual abilities, [and was] not an appropriate candidate to pursue college level instruction." (Tr. at 422.) Seibert also listed several other careers that would not be appropriate, but concluded that based "on his average capacity to think visually, his average math skills, and his average reading comprehension and reading recognition skills, [Plaintiff] might consider pursuing training and employment as a computer-assisted draftsman." (Tr. at 423.)

Plaintiff also underwent a psychiatric evaluation at Tuscola Behavioral Health Systems on September 21, 2010. (Tr. at 426-28.) Plaintiff was diagnosed with Bipolar Disorder, type II, with psychotic features, marijuana abuse, and was assessed a GAF score of 45. (Tr. at 427.)

Plaintiff also underwent an examination by Sujeeth R. Punnam, M.D. (Tr. at 431-33.) Dr. Punnam concluded that Plaintiff could stand or walk less than two hours in an eight-hour workday, could occasionally lift less than ten pounds, was limited in using hands, arms and feet, was not

9

limited mentally, and could meet his needs at home. (Tr. at 436.) Dr. Punnam did not indicate anything regarding Plaintiff's ability to sit. (*Id.*) All examination areas were normal except for a noted "wide-based" gait. (Tr. at 435.)

At the administrative hearing, Plaintiff testified that he was arrested on October 22, 2006, in Isabella County, Michigan, for possession of marijuana. (Tr. at 54.) The ALJ indicated that the Michigan Department of Corrections' records revealed a bench warrant for Plaintiff's arrest for a probation violation. (Tr. at 55.) Plaintiff stated that he "wonder[ed] what happened." (*Id.*) Plaintiff testified that he was recently diagnosed with bipolar disorder and has been attending mental health counseling twice a month, that he sees the psychiatrist once a month, and that he takes prescription medications. (Tr. at 55-56.) Plaintiff also testified that he takes prescription medications based on diagnoses of diabetes since 2008 and of high blood pressure "a couple years" ago. (Tr. at 56.) Plaintiff also stated that he was not able to succeed when taking college classes in person or online. (Tr. at 57-58.) Although Plaintiff's driver's license was suspended for "a couple years[,]" at the time of the hearing, he had a valid license. (Tr. at 67.) Plaintiff also stated that he was convicted of domestic assault in 2008 and that the victim was his three year old child. (Tr. at 68.) Plaintiff indicated that he also has children aged nineteen, eleven, ten, and nine, for which he owes a "little bit" of child support. (Tr. at 68.)

The ALJ asked the vocational expert ("VE") to assume someone with Plaintiff's background who

> individual can in a potential work setting may maximally lift weights of 20 pounds, can repetitively lift weights of ten pounds or less, can stand and walk six of eight hours or sit for six of eight hours in an eight-hour workday, but would need the ability to alternate between sitting and standing, and that the individual can only occasionally climb stairs, balance, stoop, kneel, crouch, and crawl, and that the individual from a mental standpoint can do only simple, routine, and repetitive work activities in a stable work environment associated with unskilled work activities and

10

> that from a mental standpoint the individual can tolerate at least superficial contact with supervisors, coworkers, and the general public in a potential work setting.

(Tr. at 72.) The VE responded that such a person could perform the 4,500 assembly positions, 3,500 machine operator positions, and 1,600 inspector jobs available in the lower peninsula of Michigan. (Tr. at 72-73.) The VE indicated that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. at 71, 73.)

    **F.**    **Analysis and Conclusions**

    **1.**    **Legal Standards**

"No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided . . . ." 42 U.S.C. § 405(h). As a result, a claimant's subsequent application for benefits may be barred by the doctrine of *res judicata*, where the Commissioner has made a final decision or determination on the claimant's rights to benefits based upon the same facts and issues. 20 C.F.R. § 404.957(c)(1).

In this circuit, if a claimant does not appeal an adverse disability determination, nondisability as of the date of decision is established as a matter of *res judicata*. *Carver v. Sec'y of Health & Human Servs.*, 869 F.2d 289 (6th Cir. 1989); *Wills v. Sec'y of Health & Human Servs.*, 802 F.2d 870, 871 n.2 (6th Cir. 1986); *Gibson v. Sec'y of Health & Human Servs.*, 678 F.2d 653, 654 (6th Cir. 1982). *See also Spaulding v. Comm'r of Soc. Sec.*, No. 08-5447, 2009 WL 361397 (6th Cir. Feb. 12, 2009). Therefore, ALJ David Wurzel's decision, appeal of which was dismissed by the Appeals Council as untimely, is *res judicata* as to the issue of whether Plaintiff was disabled as of October 25, 2006, the date of ALJ Wurzel's decision. (Tr. at 80-95.)

ALJ Dowd determined that through September 30, 2007, the date last insured, Plaintiff could perform a limited range of light work. (Tr. at 26-28.) The ALJ further found that since

October 1, 2008, the protective filing date for SSI, Plaintiff could perform a limited range of sedentary work. (Tr. at 28-29.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10.

After review of the record, I suggest that the ALJ utilized the proper legal standards in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

**2. Substantial Evidence**

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 11.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that the ALJ erred in finding Plaintiff capable of performing light work through the date last insured of September 30, 2007, especially where the consultative examiner Dr. Punnam found Plaintiff unable to perform sedentary work, where the ALJ did not include the sit/stand option he added to the RFC analysis since October 1, 2008, and where the ALJ did not include any psychiatric limitations. (Doc. 11.) Plaintiff also contends that the ALJ denied Plaintiff a fair hearing because he based his decision not to reopen Plaintiff's prior application on Plaintiff's failure to appear at a consultative examination. (*Id.*) Finally, Plaintiff argues that the ALJ erred in failing to assign any weight to Plaintiff's workers' compensation settlement agreement dated April 6, 2006. (*Id.;* Tr. at 190.)

**a. RFC Analysis**

The ALJ's decision was favorable to Plaintiff regarding disability as of October 1, 2008. I suggest that the ALJ's RFC analysis of Plaintiff's abilities through September 30, 2007, was supported by substantial evidence. Although Plaintiff had participated in counseling, it was for the limited purpose of learning to "cope without the use of marijuana." (Tr. at 256.) Dr. Lazzara noted Plaintiff's prior back surgery, but also noted that Plaintiff was "able to do household chores" and "able to drive and do his independent activities of daily living." (Tr. at 273.) I therefore suggest

13

that the RFC assessment and was in harmony with the objective record medical evidence and Plaintiff's own reported level of activities of daily living. *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In addition, Dr. Lazzara noted that although Plaintiff was "depressed and tearful[,]" his "immediate, recent and remote memory" were "intact with normal concentration" and his "insight and judgment" were both "appropriate." (Tr. at 274.) Dr. Lazzara concluded that Plaintiff's "symptomatology does appear to be related to his lack of conditioning," and that his "long-term prognosis does appear good with appropriate treatment[.]" (Tr. at 275.) Dr. Lazzara recommended physical therapy, pain management and endurance training. (*Id.*) The modest treatment recommended and received for Plaintiff's physical and mental impairments is inconsistent with a finding of disabling symptoms. *See Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

Evidence post-dating the date last insured, even assuming, arguendo, that it could be found to relate back to the period before the date last insured, does not require a different result. Although there were subsequent diagnoses of diabetes and bipolar disorder, there is no evidence that these impairments were disabling. To the contrary, Mr. Seibert concluded that based "on his average capacity to think visually, his average math skills, and his average reading comprehension and reading recognition skills, [Plaintiff] might consider pursuing training and employment as a computer-assisted draftsman." (Tr. at 423.) I therefore suggest that substantial evidence supports the ALJ's RFC analysis of Plaintiff's abilities through September 30, 2007, the date last insured.

**b.     Fair Hearing**

Plaintiff contends that he was denied his due process rights by the ALJ's conclusion that "Plaintiff's prior claim had been denied due to a failure to attend a consultative evaluation," when there was "no evidence in the record to support the finding" and "Plaintiff was never put on notice that an issue of whether or not Plaintiff had failed to attend a consultative examination would be dispositive of his request to reopen his prior claim." (Doc. 11 at 17.)

I first note that the ALJ stated that Plaintiff's applications for DIB and SSI benefits were "denied by initial determinations dated November 6, 2007, after review of the case by staff in Michigan's DDS. The rationale for the denial determinations was that the claimant failed or refused to attend a scheduled consultative examination(s) and that the claimant had not established he was disabled." (Tr. at 17.) In addition, the ALJ indicated that Plaintiff's counsel

> submitted this request for reopening of the prior applications after the hearing, and the request has been entered into the record as Exhibit B13E. As explained in this decision I find the claimant disabled only as of and after October 1, 2008, the date of the claimant's current application for supplemental security income. Thus, the request for reopening of the initial determinations dated November 6, 2007, on the prior applications of July 30, 2007, is denied, as the claimant has not established good cause for failing to attend the scheduled consultative examination(s) or any other good reason for reopening of prior applications.

(Tr. at 18.)

Statutory law governing social security cases provides that:

> Any individual, after *any final decision* of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain review of such decision by a civil action commenced within sixty days . . . .

42 U.S.C. § 405(g) (emphasis added). "No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein

15

provided." 42 U.S.C. § 405(h). Thus, Congress has clearly stated that § 405(g) is the sole basis for judicial review of the Commissioner's decisions.

The exception to this rule was explained by the Supreme Court in *Califano v. Sanders*, 430 U.S. 99, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977):

> [c]onstitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions . . . . [W]hen constitutional questions are in issue, the availability of judicial review is presumed, and we will not read a statutory scheme to take the "extraordinary" step of foreclosing jurisdiction unless Congress' intent to do so is manifested by "clear and convincing" evidence.

*Id.* at 109. Therefore, "absent a colorable constitutional claim, federal courts are without jurisdiction to review the Secretary's denial of benefits on the basis of *res judicata*." *Parker v. Califano*, 644 F.2d 1199, 1201 (6th Cir. 1981). Mere incantation of the Constitution is insufficient to raise a constitutional issue. As explained by the Sixth Circuit,

> The Supreme Court has noted that federal courts are without jurisdiction to review a decision of the Secretary refusing to re-open previously adjudicated claims, at least in the absence of a constitutional challenge. *Califano v. Sanders*, 430 U.S. 99, 97 S. Ct 980, 51 L. Ed. 2d 192 (1977). **Simply couching in constitutional language what is in reality an argument, that the Secretary abused his discretion in refusing to re-open a claim, does not convert the argument into a colorable constitutional challenge**.

*Ingram v. Secretary of Health & Human Services*, 830 F.2d 67, 67 (6th Cir. 1987) (emphasis added).

In the instant case, although Plaintiff has couched his argument in terms of due process, the underlying argument is nothing more than a challenge to the ALJ's exercise of his discretion. Plaintiff's counsel did not request reopening the prior decision until the administrative hearing (Tr. at 74), and when asked for a reason to do so, Plaintiff's counsel requested "two days to respond to that in writing," which the ALJ permitted. (*Id.*) Plaintiff's counsel then submitted a letter requesting reopening based on new evidence and summarizing the proffered evidence. (Tr. at 248-

49.) It is difficult to imagine how Plaintiff's due process rights could have been violated where, as here, he asked for additional time to present his arguments and was granted the same. It is unclear what more process Plaintiff could argue was due. Although Plaintiff focuses on the ALJ's reference to Plaintiff's failure to attend a consultative examination and he complains that he was unaware the ALJ would consider such evidence, I note that the ALJ did not rest his decision on that ground alone. Instead, the ALJ indicated that Plaintiff did not show "any other good reason" to reopen the application. (Tr. at 18.) Under these circumstances, I suggest that no constitutional violation has been alleged and therefore that the court lacks jurisdiction to review this issue.

### c. Workers' Compensation Settlement Agreement

Plaintiff argues that the ALJ erred in failing to assign any weight to Plaintiff's workers' compensation settlement agreement dated April 6, 2006. (Doc. 11; Tr. at 190.) In *Saunders v. Comm'r of Soc. Sec.*, No. 1:08-cv-1136, 2010 WL 1132286, at *7-9 (W.D. Mich. Mar. 3, 2010), the court considered the argument whether the ALJ erred in failing to give proper weight or consideration to Michigan's decision to grant the plaintiff benefits under Michigan's Medical Assistance ("MA") program, also known as Medicaid, and state disability assistance ("SDA"). The court noted that 20 C.F.R §§ 404.1504 and 416.904 provide that although decisions from other agencies are not binding, the other decisions must be considered. *Id.* at * 7. In addition, Social Security Ruling 06-03p "states that the ALJ 'should' explain his consideration of the other agency decisions." *Id.* at *8. However, the court in *Saunders* held that even though the ALJ failed to explain whether he considered the other agency decision, since the agency's decision presented "bare conclusions[,]" any error would be harmless. *Id.*

In the instant case, the ALJ mentioned that Plaintiff had settled a workers' compensation claim in 2006, but did not expressly consider it in his findings. (Tr. at 21.) The Commissioner

17

notes that the ALJ specifically requested the materials related to the claim but that Plaintiff's counsel sent only the redemption order, which approved the settlement agreement. (Doc. 17 at 17; Tr. at 51-52, 189-90.) Since the ALJ requested the material and received and marked it as an exhibit (Tr. at 189-90), the Commissioner contends that the ALJ did explicitly consider the settlement, even if the decision does not mention the substance of the settlement agreement. (*Id.*)

The redemption order is a "bare bones" summary of the settlement agreement amounts and a check mark indicating approval of the settlement. (Tr. at 189-90.) It does not contain any medical opinions or underlying standards or findings relating to disability. I therefore suggest that even if the ALJ did not fully consider the settlement, any error would be harmless. *See Saunders, supra*; *Willis v. Comm'r of Soc. Sec.*, No. 12-cv-10011, 2012 WL 7608133, at *15 (E.D. Mich. Oct. 29, 2012) (finding ALJ's failure to consider workers' compensation settlement harmless error where the order included no findings or information as to what disability standards were applied or even that a settlement was entered into because of a finding of disability). I therefore further suggest that this argument does not undermine the ALJ's findings.

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decision makers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/ *Charles E Binder*
                                         CHARLES E. BINDER
Dated: July 19, 2013                     United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, and electronically served on John Wildeboer, Andrew Lievense, and Meghan O'Callaghan.

Date: July 19, 2013              By    s/*Jean L. Broucek*
                                               Case Manager to Magistrate Judge Binder